USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/13/2017

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

**RONALD D. CORWIN, et al.,**

                         **Plaintiffs,**                         **14-CV-1285 (SN)**

      -against-                                          **OPINION & ORDER**

**NYC BIKE SHARE, LLC, et al.,**

                         **Defendants.**

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

Familiarity with the factual background of this case is assumed. On March 1, 2017, the Court issued an Opinion and Order on the cross-motions for summary judgment. ECF No. 389. The Opinion and Order, which discussed only whether defendants Alta Planning + Design, Inc. and Alta Planning + Design + Architecture of New York, PLLC (hereinafter, "APD") owed a duty to plaintiffs Ronald D. Corwin and Beth Blumenthal, granted APD's motion for summary judgment "in its entirety" and dismissed APD from the case. No party, however, had briefed the issue of the other defendants' cross-claims against APD. Therefore, in a March 13, 2017 Order, the Court recognized that it had inadvertently overlooked these cross-claims in its decision, vacated that portion of the March 1, 2017 Opinion and Order that granted APD's motion as it pertained to cross-claimants, and reinstated APD as a cross-defendant. ECF No. 393.

With the benefit of full briefing from all cross-claiming defendants and APD, the Court now GRANTS summary judgment to APD on all remaining claims.

## I. Standard for Contribution

Because APD has already been granted summary judgment on plaintiffs' claims, in order to establish their eligibility for contribution, cross-claimants must demonstrate that there is a genuine dispute of material fact as to whether (1) APD owed them an independent duty; (2) APD breached this duty; and (3) APD's breach "had a part in causing or augmenting the injury for which contribution is sought." Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp., 71 N.Y.2d 599, 602–03 (1988) ("While the culpable party from whom contribution is sought will ordinarily have breached a duty owed directly to the injured party, this is not invariably so."); Guzman v. Haven Plaza Hous. Dev. Fund Co., 69 N.Y.2d 559, 568 n.5 (1987) ("In the unusual case the right to apportionment may arise from the duty owed from the contributing party to the party seeking contribution."). Though "one joint tortfeasor may . . . seek common law contribution against another joint tortfeasor even where that tortfeasor did not owe a duty to the injured plaintiff," Aiello v. Burns Int'l Security Servs. Corp., 110 A.D.3d 234, 248 (1st Dep't 2013), cross-claimants cannot sustain a claim for contribution unless "an independent obligation can be found on the part of a concurrent wrongdoer to prevent foreseeable harm . . . despite the fact that the duty violated was not one owing directly to the injured person." Garrett v. Holiday Inns, Inc., 58 N.Y.2d 253, 261 (1983); see also Jordan v. Madison Leasing Co., 596 F. Supp. 707, 710 (S.D.N.Y. 1984) ("An action over for contribution will not lie unless all of the essential elements of a cause of action against the proposed contributor can be made out.").

## II. Did APD Owe Any Duty to Cross-Claiming Defendants?

### A. Alta Bicycle Share/NYC Bike Share LLC

There is no dispute that APD owed a duty to Alta Bicycle Share, Inc. (now known as Motivate International) and NYC Bike Share LLC (collectively, "NYCBS"). Unlike the other

defendants, NYCBS had a direct contractual relationship with APD based on three contracts. ECF No. 321-35. The "Services" that APD was contractually obligated to provide NYCBS included "technical services and research on [Alta Bike Share]-related services including demand and revenue modeling, GIS mapping, research, and related tasks," "planning, site design, permitting, outreach, agency coordination, and related services," and "administrative, marketing, financial, and management services and direct expenses." <u>Id.</u> The contracts explicitly state that they do not create and must not be construed as a "joint venture, partnership, franchise, or agency relationship between the parties." <u>Id.</u> In addition to disclaiming all explicit and implied warranties, the contracts limit the APD's total liability for "all contract, tort (including negligence), statutory, and other claims relating to this agreement or the services is limited to the total sum of $1,000." <u>Id.</u> Therefore, APD has a duty to NYCBS, the scope of which is limited by the enforceable limitation on liability present in the contract.

### B. City of New York

APD did not have a direct contractual relationship with the City of New York; nevertheless, the City argues that APD owes it a duty because it qualifies as an intended third-party beneficiary under the contracts signed by APD and NYCBS.

New York has adopted the Restatement (Second) of Contracts in determining whether an intended third party beneficiary exists. <u>Septembertide Publishing, B.V. v. Stein & Day, Inc.</u>, 884 F.2d 675, 679 (2d Cir. 1989). Restatement (Second) of Contracts § 302 states that "unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." <u>See also</u> <u>Mendel v. Henry Phipps Plaza</u>

W., Inc., 6 N.Y.3d 783, 786 (2006) (intended beneficiaries must demonstrate "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [their] benefit and (3) that the benefit to [them] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [them] if the benefit is lost") (citation omitted). The courts may look at the surrounding circumstances as well as the agreement when determining whether a third-party beneficiary exists. Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., 66 N.Y.2d 38, 45 (1985). It is also "well-settled that the obligation to perform to the third-party beneficiary need not be expressly stated in the contract." Trans–Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 573 (2d Cir. 1991).

In conducting its analysis, the Court examines the three contracts between APD and NYCBS that are in the record. ECF No. 321-35. See Section II.A, supra. The City is not mentioned in the contracts; however, the contracts do not have express clauses negating the potential for third-party beneficiary enforcement.

The City argues that the following factors indicate that the parties intended it to be a third-party beneficiary of the APD-NYCBS contracts, under the theory that NYCBS intended to give the City the benefit of the promised performance. The contract between the City and NYCBS preceded NYCBS's contract with APD, thus suggesting that APD should have been aware of the City's involvement at the moment the contract was executed. In the course of the contract's performance, the City worked closely and collaboratively with APD. According to APD's architect Jeffrey Olson, the City provided APD with the specifications of all street treatments, and APD incorporated such specifications in their designs. Olson Aff. at ¶¶ 9–11, ECF No. 296. APD submitted site plans to NYCBS, who in turn submitted them to the City for approval. Id. at ¶¶ 14–15. Olson also stated at his deposition that the station siting guidelines

4

themselves were developed "collaboratively" by the City, NYCBS, and APD, and that there was continued, extensive cooperation between the City and APD in its role as NYCBS's contracted architects and engineers. Therefore, the City argues that the benefits of the APD's expertise accrued directly to it, and this was the foreseeable intent of the promisee, NYCBS.

The City analogizes to Dormitory Auth. v. Samson Const. Co., 137 A.D.3d 433 (1st Dep't 2016), where the City entered into a contract with a public authority ("DASNY") for the construction of a public building. DASNY was to manage and finance the planning, design, and construction of the project, and in turn retained architects and contractors to execute the project. Id. at 433–34. After allegedly negligent conduct by an architectural firm led to significant property damage, the City sued the architects, claiming it was the third-party beneficiary of contract between DASNY and its architects. The contract expressly stated that a City agency would operate the building, and the City retained control over various aspects of the project, including participation in and approval of the design of the building, the budget for the project, the selection of contractors, including the architects, and the construction of the building. Id. at 434. Considering all these indicia, the Appellate Division, First Department overturned the lower court's dismissal of the City's third-party beneficiary claim for breach of contract.

Given the facts in this record, the Court finds that the City was an intended third-party beneficiary of the contracts between APD and NYCBS. It is clear that both APD and NYCBS intended for the City to be the beneficiary of APD's services, which were intended not only to benefit NYCBS as the administrator of the Citi Bike program, but also to benefit the City, which was deeply invested in the implementation of a massive municipal transportation program that would be utilized by over a million users. Therefore, APD owed the City a duty derived from the

APD-NYCBS contract, and summary judgment on the City's cross-claim for this reason is inappropriate.[1]

### C. Metro Express Services, Inc. and Sealcoat USA, Inc.

Metro Express Services, Inc. ("Metro Express") and Sealcoat USA, Inc. ("Sealcoat") are subcontractors on the Citi Bike project who indisputably do not have a direct contractual relationship with APD, and they have not argued that they are intended third-party beneficiaries of the contract between APD and NYCBS. Therefore, in order to determine whether APD owed any duty to Metro Express and Sealcoat, the Court must, as it did in its March 1, 2017 Opinion and Order, consider whether any applicable exceptions to the general principle that contracting parties do not owe a duty of care to third persons apply. In Espinal v. Melville Snow Contractors, Inc., 98 N.Y.2d 136 (2002), the New York Court of Appeals announced three such exceptions:

> where the contracting party, in failing to exercise reasonable care in the performance of his duties, (1) 'launche[s] a force or instrument of harm'; (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely.

Espinal, 98 N.Y.2d at 140 (citations omitted).

The Court has already found that the allegations against APD—namely, that it provided allegedly negligent design advice and site planning—were insufficient to trigger the "force or instrument of harm" exception in Espinal. Corwin v. NYC Bike Share, LLC, No. 14-CV-1285 (SN), 2017 WL 816134, at *25 (S.D.N.Y. Mar. 1, 2017). There is no serious argument that APD, whose responsibilities were limited to site planning and design has "entirely displaced" any

---

[1] Having concluded that APD owes the City a duty on a third-party beneficiary contractual theory, the Court need not reach the City's alternate argument that APD could be liable to the City on a negligence basis "[w]here . . . '[t]he particular project . . . is so affected with the public interest that the failure to perform competently can have catastrophic consequences.'" Dormitory Auth., 137 A.D. 3d at 434 (citing Trustees of Columbia Univ. v Gwathmey Siegel & Assoc. Architects, 192 A.D.2d 151, 154 (1st Dep't 1993)).

defendant's "duty to maintain the premises safely." Therefore, APD has a duty to Metro Express or Sealcoat only if they "detrimentally relie[d] on the continued performance" of APD's duties.

Metro Express and Sealcoat argue that they "detrimentally relied" on the "continued performance" of APD's duties with its contracting partner NYCBS because they received APD-drafted plans containing second wheel stops at the crosswalk ends of Citi Bike stations, and that APD "approved" as-built plans including such wheel stops that differed from their site plans. [2] Therefore, according to Metro Express and Sealcoat, the contractors detrimentally relied on APD's site plans generally in installing wheel stops, thus contributing to their understanding that installing a second wheel stop was not dangerous or likely to cause injury.

This is plainly not the "detrimental reliance on continued performance" referred to by the Court of Appeals in Espinal. Espinal extracts the detrimental reliance exception from Eaves Brooks Costume Co. v. Y.B.H. Realty Corp., 76 N.Y.2d 220 (1990). In that case, the New York Court of Appeals considered the question of action versus inaction; in other words, whether a defendant could be held liable by a plaintiff in the absence of contractual privity by failing to fulfill his contractual obligation to another party. The Court of Appeals reaffirmed the general rule that "a contractual obligation, standing alone, will impose a duty only in favor of the promisee and intended third-party beneficiaries and mere inaction, without more, established only a cause of action for breach of contract." Id. at 226. At the same time, it carved out a narrow exception, stating that "even inaction may give rise to tort liability where no duty to act would otherwise exist if, for example, performance of contractual obligations has induced detrimental reliance on continued performance and inaction would result not 'merely in withholding a

---

[2] Metro Express and Sealcoat do not contend that they were provided with a site plan by APD or anyone else for the CitiBike station where the accident occurred, nor do they contest that the APD plan for that station did not contain the wheel stop that caused Corwin's injury.

7

benefit, but positively or actively in working an injury.'" Id. (citing Moch Co. v Rensselaer Water Co., 247 N.Y. 160, 167 (1928)).

Here, Metro Express and Sealcoat's interpretation of "detrimental reliance" would lead to the same limitless liability rejected by the Court in its March 1, 2017 Opinion and Order. Even assuming that APD's performance of its contract with NYCBS was in some way negligent, its duties as to any particular station terminated when the design of the site plans were complete. APD did not provide the site plans to Metro Express and Sealcoat, order them to install any street treatments, or exercise any other control over the installation and maintenance of Citi Bike stations that could be construed as a "continuing performance"—rather, NYCBS fulfilled all of these roles. By entering into a contractual relationship to prepare site plans for NYCBS (with a provision limiting liability to a maximum of $1,000), APD surely could not have intended to be liable to all third parties, many of whom would be wholly unforeseeable, to whom NYCBS may have subsequently decided to provide these plans. Cf. Moch Co., 247 N.Y. at 165 (Cardozo, J.) ("An intention to assume an obligation of indefinite extension to every member of the public is seen to be the more improbable when we recall the crushing burden that the obligation would impose.").

APD had no duty to Metro Express and Sealcoat under any exception by the New York Court of Appeals. Accordingly, the Court's analysis in regards to these cross-claims need proceed no further, and APD's motion for summary judgment is GRANTED as to Metro Express and Sealcoat's cross-claims.

**III.     Was any Breach by APD the Proximate Cause of Plaintiff's Damages?**

   A.     **NYCBS Claims against APD**

In its March 1, 2017 Opinion and Order, the Court dismissed plaintiffs' common-law negligence claims against NYCBS on the basis of a contractual release agreement and concluded that NYCBS may be held liable in this action only if it is found to be grossly negligent. Corwin, 2017 WL 816134, at *27–28. In its April 7, 2017 Opinion and Order denying the parties' motions for reconsideration, the Court clarified that while NYCBS may be found to be grossly negligent, such a finding could not be predicated merely on NYCBS's reliance on allegedly negligent design and engineering advice from APD and other design professionals. Corwin v. NYC Bike Share, LLC, No. 14-CV-1285 (SN), 2017 WL 1318010, at *7 (S.D.N.Y. Apr. 7, 2017) (agreeing with NYCBS's characterization that "demonstrating 'ignorance once removed' based on its reliance on design advice from APD and the City does not demonstrate the 'extreme culpability' necessary to prove gross negligence" and withdrawing inconsistent statement in March 1, 2017 Opinion and Order). Rather, such a finding would be based on NYCBS's role as the owner, operator, and implementer of the Citi Bike program and, *inter alia*, Corwin's allegations that NYCBS had no validation programs to ensure that as-built stations conformed to site plans, had no safety or inspection protocol to ensure conformance to site plans, and entirely failed to supervise its contractors. ECF No. 435 at 15–16.

Given the Court's determination that NYCBS cannot be held liable in gross negligence for relying on APD's design advice as a matter of law, it stands to reason that there is no dispute of material fact as to whether "the breach of duty by [APD] [may] have had a part in causing or augmenting the injury under which contribution is sought." Nassau Roofing & Sheet Metal Co., 71 N.Y.2d at 603. APD played a key role in station design and site planning: it had no role in

9

inspecting or maintaining the stations or ensuring that its station designs were being faithfully executed by NYCBS and its contractors. Therefore, for this reason alone, APD is GRANTED summary judgment on NYCBS's claims for contribution and indemnification because no reasonable juror could find that a breach in APD's duty to NYCBS that may have possibly contributed to the injury for which NYCBS could be held liable.

B.   City of New York Claims Against APD

The City's cross-claims against APD raise different questions than those brought by NYCBS because the City and APD worked together collaboratively to develop site plans, including the site plan for the station at East 56th Street and Madison Avenue where plaintiff's accident occurred. Therefore, since the City is potentially liable to plaintiff for simple common-law negligence in its design, installation, or maintenance of the station in question, the City may have a claim against APD if there is a genuine dispute of material fact regarding whether APD was professionally negligent in designing the East 56th Street Station.

Neither plaintiffs nor any cross-claiming defendant have raised a genuine dispute of material fact about the scope of APD's duties on the Citi Bike program. As stated in the declaration of APD architect Jeffrey Olson, APD "was under no obligation to supervise the installation of, inspect, or maintain any of the Citi Bike stations." Olson Rep. Aff. at ¶ 8, ECF No. 364. Olson attests that APD's "involvement with each site ended with our submittal of the signed and sealed plan to NYCBS" and that APD "was never made aware of, and never approved of any deviations from our DOT approved site plans prior to, during, or after the installation of the stations." Id. at ¶¶ 16, 18. Therefore, any negligence ascribed to APD, gross or otherwise, would be limited to conduct relating to the professional advice rendered to the City for planning and site design.

Moreover, no reasonable factfinder could ascribe the combination of conditions that plaintiff alleges caused his accident to APD's design advice. APD did not approve or recommend the placement of the wheel stop that plaintiff struck on the east end of the station adjacent to the crosswalk. See ECF No. 321-30 at 3–4 (describing differences between design plan and as-built condition of station). Nor did APD design or approve the enlarged station footprint that plaintiffs' expert James Green argues encroached into the roadway, provided less clearance between the edge of the station and moving traffic, and encouraged Corwin to use the station itself as a temporary riding lane. Green Decl., ECF No. 335 at ¶¶ 56–58. Indeed, in a rebuttal report cited by APD, Green states as his engineering conclusion that "[t]he original Engineering design was proper in minimizing the clearance behind the parked bicycles and leaving out a wheel stop at the intersection of East 56th St. and Madison Avenue and was not followed during the construction of the bike station. . . . The public was not protected by the installation of this wheel stop and the failure to follow the specifications of the approved plan. *This failure was the causal factor of this accident.*" ECF No. 321-34 at 9 (emphasis added). In light of Green's conclusion,[3] no reasonable juror could conclude that APD's design advice for the 56th Street station contributed to plaintiff's accident at that station.

Unable to prove APD's responsibility for the specific conditions at the East 56th Street station, both plaintiffs and certain defendants have argued that APD's more general failure to insist on yellow or other conspicuous wheel stop colors or to call for shorter, less intrusive wheel stops contributed to the injury suffered by Corwin. For example, they indicate that APD recommended second wheel stops on the crosswalk side of Citi Bike

---

[3] None of the cross-claiming defendants has submitted any expert evidence regarding APD's professional negligence and therefore, would necessarily need to rely on Green's conclusions, if available, to demonstrate such negligence.

11

stations elsewhere in the City, and that these stops protruded behind the back wheels of the bicycles into the foreseeable paths of cyclists. See, e.g., ECF No. 336-25 (APD plan approving wheel stops at both sides of different Citi Bike station at Taras Savchenko Place); ECF No. 368-13 (APD plan approving wheel stops of both sides of different Citi Bike station at 33rd Street and 8th Avenue). Moreover, certain defendants argue that even if the wheel stop that plaintiff struck was not on the original plan made by APD, APD essentially ratified the wheel stop and the final site design by submitting an "as-built" plan including the second wheel stop. ECF No. 368-15.

None of these allegations is sufficient to demonstrate proximate causation between APD's design advice and Corwin's accident. The "ratification" argument cannot demonstrate proximate causation because the "as-built" plans were submitted to NYCBS after the date of the accident, and therefore could not possibly have had a causal link to it. Moreover, though APD recommended crosswalk-side wheel stops at *other* stations in the Citi Bike system, different stations are located in distinguishable traffic environments, and it is quite likely that the installation of a second wheel stop hazardous in one environment could be wholly reasonable and harmless in another. The defendants' claims that APD could be found professionally negligent by approving long wheel stops that protruded beyond the back wheel of the parked bicycles fares no better. The question for the factfinder will not be whether including a second or unreasonably long wheel stop in a design plan for a station anywhere in the Citi Bike system is professionally negligent. It will be whether APD's design advice played a causal role in the particular accident in question.

As indicated above, it is uncontested that APD did *not* recommend that a second wheel at the Citi Bike station at East 56th Street and Madison Avenue, and recommended

that the station footprint be two feet narrower. Its design directives were not followed, a second wheel stop was installed, and Corwin's injuries arose as a direct result of this deviation. Regardless of the propriety of APD's design advice in Citi Bike stations elsewhere around the City, APD still has an absolute defense to liability on the grounds that it did not recommend the installation of the actual wheel stop that caused Corwin's injuries. On this factual record, no reasonable juror could find that APD "had a part in causing or augmenting the injury under which contribution is sought," Nassau Roofing & Sheet Metal Co., 71 N.Y.2d at 603, without engaging in unwarranted speculation based only on the propriety of the placement of *other* wheel stops in *other* stations. Corwin's specific injuries were caused solely by the other defendants' failure to follow APD's design advice, and APD's motion for summary judgment is GRANTED as to the City's claim.[4]

## CONCLUSION

APD's motion for summary judgment is GRANTED in full as to Metro Express Services, Inc., Sealcoat USA, Inc., the City of New York, and Motivate International/Alta Bicycle Share, Inc./NYC Bike Share LLC. The Clerk of Court is respectfully requested to terminate defendants Alta Planning + Design, Inc. and Alta Planning + Design + Architecture of New York, PLLC as cross-defendants and/or cross-claimants in this case.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   April 13, 2017
         New York, New York

---

[4] The reasoning of this section of this Opinion and Order, of course, also provides an alternate basis for summary judgment to be granted to APD as to NYCBS's claims.